Case of the Morning 410-0958. For the appellant, Mr. Lynch. For the appellee, Mr. Bartolek. You may proceed. Thank you, your honors. May it please the court. My name is Bryce Lynch. I am here representing the interests of I & R Three Star Family Restaurant. We have two issues before the court today. The first issue is involving the jurisdiction of the circuit court over the person of the individual Latfi Sadiku. The second issue that we have before this court is that the circuit court vacated a payment order that was agreed to and consented to by both the plaintiff, the defendant corporation, and the individual defendant Latfi Sadiku, which the circuit court vacated the payment order without any evidence to support vacating that payment order. As to the vacation of the default judgment and the jurisdiction over Latfi Sadiku, Mr. Sadiku submitted to the jurisdiction of the circuit court. The initial lawsuit took place in 2003. The complaint identified Diamond Seating Company, which was Mr. Sadiku's corporation, and it also identified Latfi Sadiku. The default judgment was entered in 2003. It seems pretty clear to me now that the default judgment was only entered against the corporation. Subsequently, Mr. Sadiku appeared after notice of citation proceedings. The citation was issued to Diamond Seating Company, care of Latfi Sadiku. Mr. Sadiku appeared on May 19, 2004. The plaintiff's counsel and Mr. Sadiku spoke outside of the courtroom and Mr. Sadiku consented to personally guaranteeing payments for the corporation in the amount of $100 per month until the $7,500 default judgment was paid in full. At that time that Mr. Sadiku appeared and consented to this payment order, that constituted Mr. Sadiku's entry of appearance in the case. Code of Civil Procedure Section 2-301 is the primary statute that the plaintiff is relying on. Mr. Sadiku, prior to filing any pleading or motion, has to object to the court's jurisdiction over his person. Otherwise, he waives that argument. Now, the defendant has contended that Mr. Sadiku orally showing up and orally stating that he's reached an agreement doesn't constitute filing a pleading or motion. I disagree with that position. Mr. Sadiku agreed that he was appearing in court and he agreed to the terms of the payment order. He did not sign the payment order. However, what he did was he complied with the terms of that payment order for a period of six years. From an entry of the default judgment and from the entry of that payment order back in 2004, he complied with the terms that were written in that payment order. How much has he paid? $7,500. He made 75 individual payments. Now, with interest, he hasn't come up with everything that's owed on the case, but he made and consented to that payment order 75 different times by complying with the terms of that order. And that payment order expressly recognizes that he's present in open court and that he is personally guaranteeing the $100 payments per month. At the time that this complaint was filed, prior to the complaint being filed, the corporation of Mr. Sadiku was involuntarily dissolved by the Secretary of State. So, it stands to reason that when plaintiff's counsel is speaking outside of court with this defendant, that she realizes that there is no corporation in existence anymore. Why would she agree to $100 payments per month from a dissolved corporation? It's got all the assets it's going to have. There's no reason to accept a payment order. Mr. Sadiku's appearance in court is contested to be involuntary by the defendant. They're stating in their brief that he didn't voluntarily appear, that he was coerced into appearing through false representations by plaintiff's counsel at the time. Ms. Koontz was attorney for the plaintiff at this time. She was a young attorney, and on the citation to discover assets, it states that there is a judgment against the corporation and the individual defendant, Latfi Sadiku. But the citation is, in the beginning, it's asking for Mr. Sadiku, as President and CEO of this corporation, to appear and testify as to the assets that are available to this corporation for the outstanding $7,500 judgment. The judgment against the corporation has always been valid. That default judgment is valid. So, the plaintiff is entitled to compel the appearance and testimony of this corporate officer to determine what kind of assets the corporation has towards satisfaction of this judgment. So, his failure to appear, there's some items in the record that Mr. Sadiku's son appeared. And when he showed up in court, he stated to plaintiff's counsel, Mr. Taylor, who was appearing in court at that time. Apparently, Ms. Koontz was on vacation at this time. Mr. Taylor spoke with Mr. Bladar Sadiku, Latfi Sadiku's son, and Bladar Sadiku informed him that Latfi Sadiku was unavailable. He was in a car accident. So, Mr. Taylor agreed to continue the cause until Latfi Sadiku could show up and testify in court. There isn't anything to show that Bladar Sadiku was an officer of the corporation or that he had the ability to testify, and the plaintiff's not forced to accept any lower-level employee's testimony, as I cite in my brief. So, his appearance at the time is voluntary. When he shows up for the citation hearings on May 19, 2004, he is stating to the court that, I recognize I've got to be here, I'm recognizing this default judgment, and I'm personally going to guarantee it. If Mr. Sadiku wanted to show up and represent himself, recognize the jurisdiction of the court at that time as a pro se litigant, then he has the ability to do that. If he's going to contest jurisdiction, he needs to do that at that time of his appearance. before he does any other matters before the court. The primary case that I rely on is Lord v. Hubert. The defendant cannot recognize the court's jurisdiction and use the benefits of that jurisdiction to authorize a payment order and then turn around subsequently and say, well, wait a second, the court never had jurisdiction over me. He recognized the jurisdiction by allowing the plaintiff to only collect $100 per month from him personally. So, at that time, he's expected as a pro se litigant to know the rules and procedures just as any other attorney is expected to. And those rules require Mr. Sadiku to say at that time that, Your Honor, Judge Fries, you do not have jurisdiction over me at this time. to file a motion to vacate that default judgment at that time, back in 2004. He didn't file a motion to vacate the default judgment until 2010, six years later. So he recognized the authority of the court over him for six years. Now, the second issue that is before the court today is the payment order that was entered before the court was also vacated by Judge Chris Fries. He ordered the $7,500 payments that had been received by the plaintiff to be refunded to the defendant. Well, a payment order is a consent decree. As I cite in my brief, it's a contract, essentially, between two parties. And the only reason why you can vacate a payment order is if both of the parties consent to bearing that payment order, or if there's some other evidence of fraud, like the defendant is claiming is evidenced here. But the defendant failed to have an evidentiary hearing as to reasons for vacating a payment order for fraud, mutual mistake. There was no affidavit filed by the defendant why a payment order that was a contract between the two parties should be vacated. The defendant is now raising the argument here on appeal that, hey, this was based on fraud. Ms. Kuntz, because she issued a citation that stated that there was a default judgment against Mr. Siddiqu personally, that Mr. Siddiqu relied on that citation to discover assets in agreeing to a payment order. But there's no evidence that he even looked at the citation. I mean, there are plenty of instances where defendants appear in court after a default judgment, and they barely have even read the citation notice. The citation notice that's issued asks for them to bring bank records and all of these other evidences of income and assets that can be used to satisfy this outstanding judgment. In small claims cases and small amount of money cases, in my limited experience, I'm rather young, the defendants hardly ever show up with any of those things. So whether or not Mr. Siddiqu relied on any default judgment that was supposedly entered against him, there was no evidence presented of that. So the payment order is valid, and the defendant is also asking for you to look at the extrinsic evidence of that citation notice to say that he relied upon fraud or there's some violation against public policy. If you look at the terms of the payment order, it's not ambiguous. The payment order states that the defendant, singular defendant, comma, Diamond Seating Company, comma, and Lethby Siddiqu are present in court. So there is one defendant on this payment order. Later, in paragraph 4 of the payment order, there is still one defendant, but there's no punctuation in between Diamond Seating Company and Lethby Siddiqu. So now they're both guaranteeing that they're going to make this $100 payment. So now it's Diamond Seating Company and Lethby Siddiqu who are going to pay this $100 per month. It doesn't matter who it comes from. If it comes from the corporation or if it comes from Lethby Siddiqu, we don't care. We just want the money. $100 payments per month. I don't feel that there's any ambiguity, but the defendant is relying on one term. The defendant is saying that, paragraph 2 of the payment order, that on the defendant was defaulted by reason of his failure to appear after having been given notice of appearing on November 20, 2002. Well, I don't think that it was plaintiff's intention to state that a corporation is a person, but if you can refer to a boat as a she, why can you not refer to a corporation as a he? I don't feel like the use of the word his is saying that Mr. Siddiqu is the only person that this default judgment applies to. And I don't think that there is any evidence on the record that states that Mr. Siddiqu relied on any default judgment against his person only. Mr. Siddiqu appeared and he agreed that the jurisdiction of the court is valid against him whether or not he personally received service or not. And just to be clear, I mean, he had to have notice of these proceedings. Now, he wasn't served personally as an individual, but the corporation, his wife was an officer of the corporation. She received the service of summons on behalf of the corporation as an authorized person. And Mr. Siddiqu definitely knows that this case is in court. He didn't appear, nor did he send any attorney on behalf of the corporation to appear, and a default judgment was taken. I believe I've summarized my arguments. If the justices have any questions. I don't think we do. Thank you, counsel. Mr. Bartoli? May it please the court. I'm Michael Bartoli, and I represent the defendant, Luthi Siddiqu. Your honors, this is a case about a plaintiff trying to enforce in order to pay a judgment that either was void or never existed in the first place, as plaintiff argued.  For approximately 10 years, plaintiffs have been using various semantics in this case to try to confuse who the defendants are and to whom a judgment applies, often referring to two separate defendants as the defendant, Diamond Seating Company, and Luthi Siddiqu, or Diamond Seating Company and Luthi Siddiqu. The plaintiff's philosophy in this case all along has been one defendant is as good as the other. In fact, when we argued this case to Judge Freeze in contested arguments back in July of 2010, Mr. Lynch even said, well, he was the president of the company. They're one and the same. We could have pierced the corporate veil anyway. Your honors, more than once in this case, I'm going to argue that there have been certain waivers of arguments made on appeal. I'm holding up to you the total of the response in opposition to the motion of vacate filed with the circuit court. It's three pages, but only about two pages of substance, and that's all of the references to records, citations to authority, and arguments made. The plaintiff lost at the circuit court, clearly did not equip the circuit court with the tools necessary to rule in its favor, but then has filed a lengthy brief in this case, finally raising authority and arguments in its favor. And so I will several times reference that an argument has been waived. But first let me give you a brief, very brief recitation of the facts, only to the extent that the plaintiff has left holes in them. The plaintiff filed a single-count complaint for breach of contract against two defendants. It was a verified complaint for breach of a written contract, and it expressly stated that Diamond Seating Company entered into the contract with plaintiff, and that it did so with Rutfi Siddiqui as a disclosed agent acting on behalf of a disclosed principal. At the, the plaintiff then issued a summons to Diamond Seating Company, care of Rutfi Siddiqui. There was proper service on the corporation, but undeniably no service on the individual. At the hearing for a motion for default judgment, plaintiff asked, represented it had service, asked for default judgment, and got it, and immediately sent out four separate citations representing there was a judgment against Rutfi Siddiqui, and has made that representation for the past ten years. On July 23, 2003, in response to a citation to discover assets, Mr. Siddiqui did physically appear in court. He didn't file anything in writing then, he didn't file any motion or any pleading, and again he physically appeared in 2004. The plaintiff has referenced extensively that there was an agreement that took place. However, it's the appellant's burden to supply this court with a transcript that would show that hearing and what agreement took place. It's not in the record. I don't know if a diligent inquiry was made or not, but that's the plaintiff's burden to do so, to establish if there was some agreement resulting in the order. If your honors look at the payment order, it's drafted by the plaintiff. My client's signature is not on it anywhere. It wasn't presented to the court on a day my client was there, and it wasn't entered on a day that my client was there. So, I fail to see how this is a consent decree. There has to be record evidence. Did your client comply with the payment order in Maine? It was a court order, and when he was forced to make a payment, he did, and when he wasn't, he was picked up by the sheriffs and put in jail. When did that occur? There were numerous petitions for adjudication of indirect civil contempt. The first was on July 24, 2008, the next on November 13, 2008, the next on June 30, 2009, another on October 20, 2009, another on March 9, 2010, and that was the last one. Those were times that he was picked up on a bench warrant? The plaintiff had petitioned for indirect civil contempt, and if Mr. Siddiqui didn't appear in court, a bench warrant would issue for his arrest, and he would be bonded, and the bond used, surrendered, used to pay the judgment. So, was each of those a bond surrender? Were each of those a request for indirect contempt? Those were each requests for indirect contempt. At least some of them did result in arrest. I can't remember from the record how many there were, but they are in the record every time that my client was arrested. The circuit court properly held that the default judgment on November 20, 2002, against Lutfi Siddiqui was void. That holding is proper for two reasons. First, an argument that was never controverted was that this complaint, on its face, failed to state any recognizable cause of action against Lutfi Siddiqui. He was an agent in a disclosed capacity entering into a contract on behalf of a disclosed principal. Only now, for the first time on appeal, has the plaintiff taken the position that the default judgment entered on November 20, 2002 was only against the corporation, that it was not against Lutfi Siddiqui. And the plaintiff does that in order to advance another argument. What is the relationship between Mr. Siddiqui and the corporation? He was an agent of the corporation. An employee? Well, he was the president, so he was also an employee. The owner? He was also the owner, but it was an Illinois corporation. All right. The plaintiff advances also the argument that the payment order was Lutfi Siddiqui's guarantee of the debt created by the corporation. Neither of these arguments were advanced to the circuit court, and they therefore are both waived. But even if they were not waived, they are just ultimately unsupported by the record. The summons issued lists Diamond Seating Company C.O. Lutfi Siddiqui, which is the same addressee used in all the citations to discover assets. After the default judgment, the plaintiff repeatedly represented it. It obtained a default judgment against Lutfi Siddiqui, despite the fact that he never actually defaulted because he wasn't served the process. When Lutfi Siddiqui appeared in court in July 2003, if your honors look at the transcript, you'll see there was discussion about him filing for personal bankruptcy and that possibly discharging his personal obligations. If there was only a judgment against the corporation, neither the judge, my client, nor the defendant would have cared if Mr. Siddiqui was filing for personal bankruptcy. He still would have had to show up and give testimony about the corporation's assets. There clearly was contemplation at that time that he was a personal judgment debtor. The payment order also purports to require Lutfi Siddiqui to pay post-judgment interest and costs. If he wasn't a judgment debtor, I don't know why he would be paying post-judgment interest and costs. Undeniably, there was no jurisdiction over Mr. Siddiqui because there was no service of process before the default judgment. The plaintiff argues that the physical appearances in court amounted to a general jurisdiction. If this case had been filed prior to the year 2000, I would agree with plaintiffs. Plaintiffs cite the amendments to the Code of Civil Procedure, 2-301A, which eliminated the need to file special appearances, but added subsection A-5, which narrowed the scope by which a party can waive the right to object to personal jurisdiction retroactively. It took away the standard of general appearances submitting to the court's jurisdiction under Lord v. Hubert and limited it to filing a motion or a pleading that does something other than attack jurisdiction. As Mr. Lynch acknowledged, there was no motion or pleading that Mr. Siddiqui filed before he attacked jurisdiction. Your honors have to look at the statute. Also, if we look at the Pelican case that the plaintiff cites, that also came before the amendment to the statute. If that case were up today, the amended statute would be used and, unfortunately, it would come out differently. The plaintiff also relies significantly on GMB financial group opinion, which does discuss the amendment to the Code of Civil Procedure, but it extensively also construes subsection A-5 and expressly discusses how the means by which a party waives the right to object to personal jurisdiction has been significantly narrowed. Plaintiff has not argued, either to the circuit court or here, that my client has done anything that is in that limited realm of actions found in the statute in order to retroactively waive the right to object to personal jurisdiction. That GMB financial group opinion renders moot all the arguments based on Lord v. Hubert  Bradshaw v. Pelican is also distinguishable for another reason. There, the defendant had claimed there was no personal jurisdiction, although there appeared to be an agreed order. The defendant appealed the case and was required to supply the appellate court with transcripts of the proceedings, which would show whether or not there really was an agreement to that order, and the appellate failed to do so. In this case, the appellate failed to do the exact same thing. We don't have any transcripts from those days where the appellant claims that there was an agreement that resulted in this order. What we have is a document drafted by the plaintiff, submitted to the court when my client wasn't there. There's no evidence it was ever shown to my client, and it was entered on a date. There's no record evidence my client was even there. There have been other cases where a purported agreed order has been challenged, and courts have said it. It's not an agreed order if you can't point to the record and show that it really is an agreed order or a consent decree. You need to show either the party or his attorney signed it, was there when it was entered, prepared it, put something in the record, or look at the transcripts that show whether or not it was agreed to. But you need something in the record to show it. The court also did not err in vacating the payment order. The payment order, by its own terms, purports to require Mr. Sadiku to pay the debt created by the default judgment against him. If there is no default judgment, there is nothing to pay off in the payment order. And we cited authority to the circuit court that an order that's based on another void order is also a void. But plainly, the underlying basis for the payment order simply does not exist. Reading the face of the payment order that the plaintiff drafted, to say that it's not the least bit ambiguous is quite a stretch. Paragraph 2 does clearly say who it is that defaulted and against whom default judgment was entered. Let me ask you a question. If there's no judgment and there's no pending matter in the trial court, what authority does the trial court have to order the restaurant to hand over $7,500 to your client? If he was never there in court officially, if he never appeared, if he's a volunteer and he pays those dollars, maybe there's a reason for them to be repaid. But why is this trial court directing that they be repaid, particularly if the trial court never entered an order and never exercised jurisdiction over your client, given that's your argument? It never entered an order based upon a consent or an agreement, but it apparently entered some order. Why do you get your money back? Well, it is a court of equity, and it can unwind void orders. The court did exercise jurisdiction over my client. That doesn't mean it had the right to do so or the power to do so. So what the court did was unwind it. But you don't want it to exercise jurisdiction over your client. How do you get it both ways? You don't have any jurisdiction over me, but Judge, there's this additional remedy that I would like. In addition to vacating this void order because no order was ever entered against me, I want you affirmatively to order them to repay dollars to me. How does that happen? Well, we did also argue that in the alternative to being void, it was void of bullying could be rescinded, and we did raise the fences to the formation of the purported consent decree. It's rescinded. And under rescission, the court puts the parties back in the position they were beforehand. And in this case, the position they were before that payment order was my client hadn't paid any money and the restaurant hadn't collected any money. And that's all we wanted. But the restaurant had paid money to your client, right? No. Under the terms of the complaint, it had a contract with the other defendant, the corporate defendant, not with my client. And that's a verified complaint. It was a sworn statement. Against whom there's a judgment. Yes. But the plaintiff took that judgment or really took that pleading and tried to get a judgment against the individual defendant and all along has been trying to enforce judgment against the individual defendant. And Mr. Lynch has even said, we don't care who it comes from. Well, if you swear in a complaint that you have a contract with a corporate entity, you don't go try to enforce that complaint against an individual. You never had a right to a judgment against that person. And they never had service against that person. Yet misrepresented to the court, they had service of process. Misrepresented to my client, there was default. And used that to enforce this order to pay $100 a month for all these years. So with no underlying judgment debt of Mr. Siddiq to be paid, why should there be a payment order? Why should he be required to pay $100 a month towards a judgment that is not valid against him? Even if the payment order were a consent decree, which we disagree that it is because the record evidence does not show it is, it was subject to the defenses to formation of a consent decree. There was clear fraud here. The same lawyer that filed the complaint went to the hearing on the motion for default judgment, told the court there was service of process. The same lawyer sent out all the citations to Discover Assets saying that Luthfi Siddiq defaulted. There was a default judgment against him. The same lawyer prepared the payment order which says that Luthfi Siddiq failed to appear and he defaulted. And so he has to pay $100 a month. I think if this court is going to consider the policy, we should require our lawyers to be honest with both the courts and with opposing parties. If you have service of process, you have service of process. If you don't, you don't. And Judge Fries was very noticeably agitated by this case and the fact that this had gone on for so long. And had it said on the record, it's not the court's job to police all the lawyers. We have crowded dockets. We can't do a detailed inquiry into every case. It's your job to know. If you have service of process, you have service of process. If you don't, you don't. Just to go back, Your Honors, the statute 2-301A and 8-5 are what control this case, not the line of cases from Order v. Hubert. Say if there is some general appearance or acknowledging the court's jurisdiction. That statute was amended in 2000. This case was filed in 2002. There's no issue about it beginning to apply after the case had started. The legislature essentially, with respect to this narrow issue, overruled that line of cases. Thank you, counsel. Rebuttal, Mr. Lynch? Yes, Your Honor. My first point is that the defendant is stating that we've waived our arguments that we've made here before the court today. In the circuit court, we argued that Mr. Sadiku had made his general appearance before the court. He had already entered his appearance and waived any objection over the jurisdiction of the circuit court to his person. The court did not accept our opinion on that matter, but we made the argument. The second argument that we made was that there was a payment order and that in Ray MMD, a case where there was a statute at the time where grandparents could visit when there was a deceased parent, which was subsequently later overruled and found unconstitutional, that case where the consent decree looked to me like it was based on that statute. They agreed that the father agreed with the grandparents at the time that they had the right to visit the minor child. He entered into a consent agreement with the parents and that was found to be a good agreement by all the courts involved. Similarly here, we have two parties that entered into a consent agreement and without any evidence to support overturning that in the trial court, you have to uphold that payment order. Whether or not there was jurisdiction against Lucky Sadiku and whether or not he waived his jurisdictional argument by failing to timely bring that issue before the court until six years later, the payment order is still good. We don't have any evidence that was presented to the circuit court to say that he relied upon a default judgment being personally entered against him and that plaintiff's counsel at the time, Ms. Stephanie Koontz, told him that, hey, I've got a judgment against you, you better pay up. There wasn't any evidence to show that, that he relied on anything as far as a default judgment against him. The next point that I believe Mr. Bartolak raised was that there was nothing included in the transcripts as to the record of the proceedings on the day when Mr. Sadiku appeared in court and agreed to payments. There was representation before the court and it is in the record. I included the transcripts from the day of May 19, 2004 when he appeared. I believe that's the correct date. Mr. Sadiku appeared, they went before the judge. Counsel, I believe, stated that, Judge, we've reached an agreement as to all issues, and then the court directed counsel for the plaintiff to prepare that written payment order that settled all the issues. Now, she did prepare that written payment order. It's correct that Mr. Sadiku did not appear on the date when it was entered, which I believe was five days later, May 24, 2004, I believe it was. He didn't appear on that date, but, and he didn't sign the order, but what he did do is he, as good as signed it, because he made 24 at least payments of $100 before even a petition for indirect civil contempt was ever filed. So for sure, 24 payments were voluntary. A petition for indirect civil contempt two years later was filed, and there were various petitions for contempt filed later. However, usually when those petitions for contempt were filed, Mr. Sadiku would subsequently forward all the payments that were owed, and counsel for the plaintiff would accept those payments and withdraw their contempt petition. Now, when he didn't do that, if he was lawfully entitled to show up at adjudication for indirect civil contempt proceedings and he didn't show up, that would be why a body attachment was entered against him. But it was not showing some involuntary means of payment. I mean, two years uninterrupted we have voluntary payments. He ratified that payment order. He as good as signed it. Thank you, counsel. We'll take this matter under advisement.